IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-02039-RBJ-CBS

BRANDON J. CONLON,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, Colorado, acting by and through its BOARD OF WATER COMMISSIONERS, a municipal corporation of the STATE OF COLORADO,

    Defendant.

## ORDER

This case comes before the Court on defendant's motion for summary judgment [docket #35] and plaintiff's motion for summary judgment [#36].

**Facts**

The plaintiff, Brandon Conlon, is an electrical engineer who was employed by Denver Water from June 2008 until he was terminated in July 2010. Mr. Conlon alleges that he suffered several adverse actions in violation of the Americans with Disabilities Act ("ADA") and the Colorado Anti-Discrimination Act ("CADA").

In February 2009 Mr. Conlon was involved in a car accident. Following that accident, Mr. Conlon suffered from back and leg pain, and as a result of his pain, he requested leave in April 2009. Because he had not yet worked for Denver Water for 12 months, Mr. Conlon was not eligible for leave under the Family Medical Leave Act ("FMLA"). However, Denver Water allowed Mr. Conlon to take unpaid administrative leave and agreed to hold his job for him until his return date of June 19, 2009. On June 9, 2009 Mr. Conlon became eligible for leave under

1

the FMLA, and Denver Water alerted Mr. Conlon that his leave would now begin to count against his twelve week allotment under the FMLA.

On June 19, 2009, the day Mr. Conlon was scheduled to return to work, he asked to extend his leave until August 17th. In August Mr. Conlon again asked to extend his leave into October because he would be unable to perform his job functions. At that time Denver Water alerted Mr. Conlon that his FMLA leave would run out on August 31, 2009, and if he needed more time he would need to request an unpaid personal absence.

On August 27, 2009 Mr. Conlon emailed his supervisors at Denver Water to discuss his return to work. In this email Mr. Conlon stated that his treatment providers said that he would not be able to work full time. Rather, Mr. Conlon hoped to return to work four hours per day. Mr. Conlon also asked about the availability of a sit/stand work station and a chair with lumbar support. This email was forwarded to several people at Denver Water including Sandra Miller, the Manager of Healthcare and Benefit Administration. Ms. Miller instructed Mr. Conlon's supervisors that for any accommodation she would need something from Mr. Conlon's doctors and suggested meeting with Mr. Conlon to discuss his situation. Ms. Miller also stated that Mr. Conlon would need to bring in a fitness for duty form if he had any restrictions, including not being able to work full time.

On August 31, 2009 Mr. Conlon submitted a fitness for duty form that was completed by his doctor, Dr. Lichfield. The fitness for duty form stated that Mr. Conlon could not work more than four hours per day. The form also stated that by October 12, 2009 Mr. Conlon would be able to work six hours, and by December 4, 2009 he would be able to work a full eight hour work day. Mr. Conlon then had a meeting with Robert Mahoney, director of the engineering division, and Ms. Miller. In that meeting and in a follow-up letter, Mr. Conlon was told that he

2

would not be reinstated from his FMLA leave with these restrictions.[1]  In the letter from Mr. Mahoney to Mr. Conlon, Mr. Mahoney explained, "you may be entitled to benefits available through the Americans with Disabilities Act.  One benefit would be a reasonable accommodation.  If you would like to request an accommodation, please let me know or contact Sandra Miller . . ."

Mr. Conlon has not presented evidence that he contacted Mr. Mahoney or Ms. Miller for an accommodation that would allow him to work part time.  Instead, Mr. Conlon obtained another fitness for duty form from Dr. Lichfield dated September 10, 2009 that stated that Mr. Conlon could work eight hours per day five days a week with up to four hours of sitting and four hours of standing.  The form also stated that Mr. Conlon needed hourly breaks.  In the special equipment or special working conditions section, Dr. Lichfield wrote "sit/stand station.  Extra lumbar support.  Leg/back pain accommodation."

Mr. Conlon resumed working for Denver Water on September 8, 2009 and was back to full-time work on September 14, 2009.  On November 4, 2009 Mr. Conlon submitted another fitness for duty for with the same restrictions as the September 10, 2009 form.  On January 6, 2010 Mr. Conlon received an annual performance review for the period ending December 13, 2010.  Mr. Conlon scored an overall performance rating of "does not fully meet expectations." This negative review was based in large part upon problems with Mr. Conlon's attendance since he returned to work.  Mr. Conlon appealed the performance review.  In a letter he explained that as a result of the car accident, "I have missed a significant number of hours of work this year. According to my records as of December 31, 2009, I have missed 118 hours."  Mr. Conlon stated that he would work an additional 118 hours in 2010 to make up for the missed time.  He would accomplish this by working 43-45 hours per week, and possibly more if he worked weekends.

---

[1] Mr. Conlon does not bring any claims under the FMLA.

3

He then requested a "medical exception" on his evaluation so that his overall performance would be "fully meets performance standards." Mr. Conlon believed this was significant because "[m]issing a step increase would be detrimental to [his] future earnings and retirement benefits."

In late January Mr. Conlon's supervisor authorized Mr. Conlon to sign up for a week long training conference to be held in the summer out of state. However, the supervisor later revoked that authorization, because the trip would require more than 40 hours and long days of sitting without breaks every hour. He believed that the attendance requirements of the conference and the travel were outside of Mr. Conlon's physical restrictions.

In March 2010 Mr. Conlon submitted another fitness for duty form that represented that he could work up to 45 hours per week "as symptoms allow." This form also indicated that Mr. Conlon's restrictions would be permanent. In a letter dated April 16, 2010 Mr. Mahoney responded that "Denver Water understands this requirement and will provide this accommodation." However, in response to intermittent absences and a failure to complete assigned tasks, Mr. Mahoney requested that Mr. Conlon's supervisors complete a performance review.

On May 21, 2010 Mr. Conlon's supervisors completed a review and assigned an overall rating of "does not fully meet" expectations. Mr. Conlon appealed this review. In his appeal, Mr. Conlon stated that he had "repeatedly asked for a part-time schedule, limited work from home, or unpaid time." Mr. Conlon alleged "46 accommodation violations." Mr. Conlon has not provided any evidence of these repeated requests. Mr. Mahoney responded to the appeal in a letter dated June 1, 2010. In the letter Mr. Mahoney explained that Mr. Conlon had not requested a modified schedule but rather submitted fitness for duty forms indicating that he could work full time. Mr. Mahoney explained that "you may request an accommodation at any time,

4

and, given your statements in your appeal, I have asked Ms. Miller to contact you to explain the Disability Review Process." Mr. Mahoney determined that there was a basis for the negative performance review and suggested that Mr. Conlon work with his supervisors to formalize a Performance Development Plan.

On June 4, 2010 Mr. Conlon met with Ms. Miller. Ms. Miller told Mr. Conlon that if he needed to work part-time he would need to submit documentation indicating that there was a medical need. Mr. Conlon submitted a new form from Dr. Lichfield that stated that Mr. Conlon could work 6-8 hours per day, with a base schedule of 30 hours per week, and up to 45 hours if his symptoms allowed it. Dr. Lichfield also said that Mr. Conlon would likely have flare-ups and estimated that they would occur about twice every two weeks lasting one to two days. Mr. Conlon requested that he be allowed to use up to 10 hours per week of FMLA time to allow for this schedule. Denver Water provisionally approved this plan but requested a second doctor's opinion.

In a June 25, 2010 letter Ms. Miller explained that per Denver Water policy, Mr. Conlon would have to use his accrued vacation and personal leave before using FMLA leave. Mr. Conlon requested as a reasonable accommodation that he be allowed to use unpaid leave rather than his accrued hours. Ms. Miller responded that "[y]our request to be accommodated under the ADA by allowing you to take unpaid leave in lieu of having to use your accrued leave as required by Denver Water policies does not appear to be medically necessary to enable you to perform essential functions of your job. However, if you submit a Fitness for Duty form indicating that taking unpaid leave versus using your accrued leave is medically necessary for you to perform your job, then Denver Water will consider if that is a reasonable accommodation."

On June 28, 2010 Mr. Conlon submitted another fitness for duty form from Dr. Lichfield that had the same restrictions but also said, "FMLA/ADA unpaid hours. Sit/stand station has not helped. Denver Water to work with Brandon Conlon to find appropriate accommodation."

Mr. Conlon continued to have attendance and performance problems. The week of July 6, 2010 Mr. Conlon worked only 6.5 hours and only 8 hours the following week. Mr. Conlon also missed numerous deadlines that were set in his Performance Development Plan. On July 22, 2010 Mr. Mahoney terminated Mr. Conlon's employment. Mr. Mahoney's stated reason for terminating Mr. Conlon was that he had failed to meet the productivity and dependability standards described in the Performance Development Plan.

**Conclusions**

Exhaustion of Administrative Remedies

Before a plaintiff can bring suit under Title VII he must exhaust his administrative remedies by filing a complaint with the EEOC. "Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII." *Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir. 1996). An employee must exhaust his administrative remedies for each discrete unlawful employment practice. *Martinez v. Potter,* 347 F.3d 1208, 1210-11 (10th Cir. 2003). "The rule is equally applicable . . . to discrete claims based on incidents occurring after the filing of Plaintiff's EEOC complaint." *Id.*

Mr. Conlon filed an EEOC complaint in June 2010. In his complaint Mr. Conlon alleged discrimination based on Denver Water's failure to accommodate his disability. In his complaint Mr. Conlon included events through June 1, 2010. He did not discuss the requirement that he use accrued time before FMLA time or his termination. Mr. Conlon asserts that he contacted the EEOC by phone three times to inform them of his termination. However, Mr. Conlon has failed

to provide any evidence that the EEOC received this update. Because Mr. Conlon cannot show that he supplemented his EEOC complaint, those particular grievances are barred from consideration by this Court. Thus this Court will only consider those allegations of discrimination that occurred on or before June 1, 2010 and were included in Mr. Conlon's EEOC complaint.

ADA Claim

The Americans with Disabilities Act prohibits discrimination against a "qualified individual" with a disability on the basis of that disability. 42 U.S.C. § 12112(a). Discrimination under the ADA includes failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." *Valdez v. McGill*, 462 Fed. App'x 814, 817 (10th Cir. 2012) (quoting 42 U.S.C. § 12112(b)(5)(A)). Mr. Conlon alleges that he was discriminated against by Denver Water when it failed to make reasonable accommodations in response to his back and leg pain.

In requiring reasonable accommodations, the federal regulation "envisions an interactive process that requires participation by both parties." *Templeton v. Neodata Services, Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (quoting *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). Generally, the process begins when an employee provides his employer with notice of his disability and any resulting limitations. *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1171-72 (10th Cir. 1999). This process imposes a duty on the employee to fully participate in the interactive process and provide critical information about his condition and limitations. *Turner v. City & Cnty. of Denver*, No. 10-cv-00583-PAB-KMT, 2011 WL 1595981 (D. Colo. April 27, 2011). The employer also has a duty to "engage in a flexible give-and-take with the disabled employee so that together they can

7

determine what accommodation would enable the employee to continue working." *E.E.O.C. v. Sears Roebuck & Co.,* 417 F.3d 789, 805 (7th Cir. 2005). When this process fails to lead to a reasonable accommodation, "responsibility will lie with the party that has caused the breakdown." *Id.*

In his complaint, Mr. Conlon argues that Denver Water failed to engage in the interactive process with him to find a reasonable accommodation. To support his complaint, Mr. Conlon says that when he attempted to return to work in September 2009 he was told that if he did not return full time he would be terminated. If this were the end of the communications between Mr. Conlon and Denver Water, then it would be clear that Denver Water was responsible for the break down in finding an accommodation for Mr. Conlon. However, this was not the end of the process. Instead, Denver Water sent Mr. Conlon a letter confirming their discussion and saying that although he was not entitled to part time work through the FMLA, he could seek an accommodation under the ADA by contacting Ms. Miller or Mr. Mahoney. Mr. Conlon has not presented any evidence that he contacted either of them to discuss an accommodation to his work schedule.

Instead he submitted a new fitness for duty form that stated that he was able to work 40 hours per week. "An employer is not expected to accommodate disabilities of which it is unaware and, '[i]n general, [ ] it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed.'" *Montoya v. State of N.M.*, 208 F.3d 226 (10th Cir. 2000) (quoting 29 C.F.R. Pt. 1630, App. § 1630.9 at 361 (1999)). By submitting the fitness for duty form that stated that he could work forty hours per week, Mr. Conlon communicated to Denver Water that he was able to work fulltime. The form also said that Mr. Conlon would need a sit/stand work station and a chair with lumbar support. Denver Water provided both of these to

Mr. Conlon. Under these facts, it is unreasonable to hold Denver Water accountable for failing to accommodate Mr. Conlon when he did not communicate to Denver water that he was limited from being able to work forty hours.

The next time that Mr. Conlon asked for an accommodation was following a negative annual review. In January 2010 Mr. Conlon received a "does not fully meet expectations" rating on his annual performance review. Part of the reason for this negative review was Mr. Conlon's attendance — in addition to his FMLA time, Mr. Conlon missed 118 hours. Mr. Conlon appealed this review by writing a letter. In the letter Mr. Conlon explained that his absences were the result of his disability, and he asked for "medical exception" so that his review could be changed to "fully meets performance standards." Denver Water refused to change his review. However, they did say that they would give him another performance review before the end of the next review period, and if Mr. Conlon's performance improved, he could receive a pay raise at that time.

"The idea of an accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job." *Hennagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1264 (10th Cir. 2009) (quoting *Matthews v. Denver Post*, 263 F.3d 1164, 1168-69 (10th Cir. 2001)). Mr. Conlon's request that his performance evaluation be changed would not enable him to perform an essential function of his job. Retroactively modifying the performance review would not change how Mr. Conlon performed his job. Instead, it would allow him to receive a raise although he had not met his employer's expectations. This is not a reasonable accommodation.

In Mr. Conlon's appeal letter, he also communicated that he would make up the 118 hours that he missed in 2009 by working 43-45 hours per week. In making this representation, Mr. Conlon continued to communicate to Denver Water that he was able to work full time. Mr. Conlon's ability to work forty hours per week was again confirmed by his March 2010 fitness for duty form that said Mr. Conlon could work up to forty-five hours per week and it would be a permanent limitation. Denver Water responded to this by comparing the essential duties of Mr. Conlon's job with this accommodation request and determined that Denver Water would be able to accommodate these restrictions. Mr. Conlon has not provided any evidence that he expressed the need to work fewer than forty hours per week until after his second negative performance evaluation in May 2010.

When Mr. Conlon appealed his employment evaluation and stated that Denver Water had failed to accommodate his needs, a meeting was set up with Ms. Miller. At this time, Ms. Miller told Mr. Conlon that she would need some sort of indication that working less than forty hours per week was medically necessary. An employee's "failure to provide medical information necessary to the interactive process precludes [him] from claiming that the employer violated the ADA by failing to provide reasonable accommodation." *Turner v. City & County of Denver*, No. 10-CV-00583-PAB-KMT, 2011 WL 1595981 (D. Colo. Apr. 27, 2011). In this situation, Mr. Conlon had provided Denver Water with numerous fitness for duty forms completed by his physician stating that he was able to work full time. It was not unreasonable for Denver Water to request verification that this was no longer the case.

As soon as Mr. Conlon submitted the medical form from his doctor a back-and-forth began with Denver Water to determine if it would be possible to accommodate Mr. Conlon's physical limitations. The interactive process is a process that requires "give-and-take." *Sears,*

417 F.3d at 806. As soon as Mr. Conlon requested to work part time and provided verification that it was medically necessary, Denver Water engaged in this process with Mr. Conlon. There is no evidence that Denver Water failed to engage in the interactive process to find a reasonable accommodation for Mr. Conlon. Accordingly, Denver Water did not fail to provide a reasonable accommodation to Mr. Conlon.

Finally, Mr. Conlon argues that Denver Water failed to offer a reasonable accommodation when it rescinded authorization for him to attend the training conference. First, this Court is not convinced that not allowing Mr. Conlon to attend the conference is an adverse employment action. "An employer's act must do more than *de minimis* harm, and must be "materially adverse to the employee's job status." *Belgasem v. Water Pik Technologies, Inc.*, 457 F. Supp. 2d 1205, 1215. In *Belgasem,* Judge Babcock found that a failure to train was not an adverse employment action. *Id.* Mr. Conlon has not presented evidence that not being allowed to go to the training would adversely impact his job status. Further, Mr. Conlon has not presented any evidence that he requested an accommodation that would allow him to go to the conference. Accordingly, this argument cannot succeed.

CADA Claims

In addition to the ADA, Mr. Conlon also brings suit under Colorado's Anti-Discrimination Law, C.R.S. § 24-34-401. Like the ADA, the CADA also requires exhaustion of administrative remedies. The statute provides:

> No person may file a civil action in a district court in this state based on an alleged discriminatory or unfair practice prohibited by parts 4 to 7 of this article without first exhausting the proceedings and remedies available to him under this part 3 unless he shows, in an action filed in the appropriate district court, by clear and convincing evidence, his ill health which is of such a nature that pursuing administrative remedies would not provide timely and reasonable relief and would cause irreparable harm.

Colo. Rev. Stat. Ann. § 24-34-306(14). *See also Kane v. Honeywell Hommed, LLC,* No. 11-cv-03352-PAB-KLM, 2012 WL 4463701 (D. Colo. Sept. 26, 2012); *City of Colorado Springs v. Conners,* 993 P.2d 1167, 1169 n.3 (Colo. 2000) ("As a condition precedent to bringing an action in district court, a party must exhaust her administrative remedies available under the [CADA], and a right-to-sue letter will often serve as evidence that a party complied with this requirement").

In his complaint, Mr. Conlon stated that he filed a complaint with the EEOC in June 2010 and has complied with all Federal and State requirements prior to filing suit. His complaint did not include anything about filing a complaint with the Colorado Civil Rights Division ("CCRD"). Further, Mr. Conlon has not presented any evidence that he pursued or exhausted his administrative remedies with CCRD. Accordingly, Mr. Conlon is barred from bringing claims under the CADA.

**Order**

1. Defendant's motion for summary judgment [#35] is GRANTED.
2. Plaintiff's motion for summary judgment [#36] is DENIED.
3. The motion of plaintiff's counsel to withdraw is GRANTED [#48].
4. This civil action is dismissed with prejudice. Defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.Colo.LCivR 54.1.

DATED this 14th day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge